UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:12-CR-20-BR
NO. 5:15-CV-526-BR

BRANDON INGRAM            )
                          )
                          )
         v.               )
                          )  ORDER
                          )
UNITED STATES OF AMERICA  )
                          )

This matter is before the court on the government's motion to dismiss or, alternatively, for summary judgment on petitioner's ineffective assistance of counsel claims and to place in abeyance petitioner's claim based on <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015). (DE # 140.) Petitioner, who is represented by appointed counsel, did not file a response to the motion.[1]

## I. BACKGROUND

In 2012, a jury convicted petitioner of one count of conspiracy to distribute and possess with intent to distribute 280 grams or more of cocaine base (crack) and a quantity of cocaine, three counts of distribution of cocaine, and one count of distribution of crack; he was found not guilty of using and carrying a firearm during a drug trafficking crime. The court sentenced him to a total term of 360 months imprisonment. Petitioner appealed his conviction and sentence. In 2014, the Fourth Circuit Court of Appeals affirmed. Petitioner then filed a petition for a writ of certiorari, which the Court denied on 6 October 2014.

---

[1] Petitioner filed *pro se* a motion for an extension of time to file a response to the government's motion. (DE # 144.) Because petitioner is represented by counsel, the court denied the motion. (DE # 145.)

On 5 October 2015, petitioner timely filed *pro se* a 28 U.S.C. § 2255 motion raising ineffective assistance of counsel claims. (DE # 122.) The government filed a motion to dismiss. Petitioner, through counsel, filed an amended § 2255 motion. (DE # 137.) The amended motion incorporates by reference petitioner's initial § 2255 motion and adds a claim based on Johnson. On 10 August 2016, the court denied the motion to dismiss and directed the government to file an answer or other response. (DE # 138.) The government filed the instant motion.

## II. DISCUSSION

Because the court will consider affidavits in resolving the government's motion, the court will proceed under the standard for summary judgment.

> Summary judgment should be granted when there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The judge may not weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[I]t is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a [fact finder] could properly find in its favor." *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014) (citations omitted). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

Garrison Prop. & Cas. Ins. Co. v. Rickborn, No. 2:15-CV-4379-PMD, 2016 WL 7451133, at *1 (D.S.C. Dec. 28, 2016) (most alterations in original).

A.  Ineffective Assistance of Counsel Claims

Petitioner's initial § 2255 motion raises claims based on ineffective assistance of counsel. The standard for such a claim is well established.

> "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). In [*Strickland v. Washington*, 466 U.S. 668, 687 (1984)], the Court identified two necessary components of an ineffective assistance claim: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

Jones v. Clarke, 783 F.3d 987, 991 (4th Cir. 2015).

> In expounding upon the prejudice requirement, the Fourth Circuit has recognized:
>
> a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." In the specific context of this case, [the petitioner] must establish there is a reasonable probability that, absent the alleged error, the [jury] "would have had a reasonable doubt respecting guilt." Under *Strickland*, "[i]t is not enough for [the petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding," and "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently[.]" In short, "*Strickland* asks whether it is 'reasonably likely' the result would have been different," and the "likelihood of a different result must be substantial, not just conceivable."

Id. at 992 (citations omitted) (some alterations in original).

Petitioner contends that counsel rendered constitutionally ineffective assistance in seven respects and that the cumulative effect of those errors denied him a fair trial. The court addresses each ground in turn.

3

1. *Failure to Advise Court of Breakdown in Communication*

Petitioner first claims that counsel should have advised the court that there was a total breakdown in communication between them requiring counsel to withdraw before trial. Specifically, he complains that counsel's office did not accept collect telephone calls from the jail where petitioner was incarcerated pretrial. (Pet'r's Mem., DE # 122-1, at 15.) According to petitioner, counsel did not listen to him when he informed counsel that Kino Wooten was incarcerated during the times petitioner allegedly sold drugs in Wooten's residence and refused to consider petitioner's suggestion that his family help counsel locate Wooten and Bruce Douglas as potential witnesses. (Pet'r Aff., DE # 122-1, at 40 ¶¶ 6, 9, 10.) As a result, petitioner contends, counsel failed to adequately investigate or prepare for trial. (See Pet'r's Mem., DE # 122-1, at 15, 17.) The court disagrees.

Petitioner does not deny that counsel met with him in person prior to trial. (See Webb Decl., DE # 143-1, ¶ 1 ("I met with Petitioner on at least nine (9) occasions from the date of appointment until the commencement of trial.").) So petitioner and counsel did in fact communicate, albeit not telephonically. While counsel may have disagreed with petitioner's assessment of the evidence in the case and strategies to pursue, such difference of opinions during their meetings does not amount to a complete breakdown in communication such that counsel should have informed the court and sought to withdraw. Also, and as discussed further below in section II.A.4, counsel made a strategic decision not to call Wooten, Douglas, or any other witness for the defense after adequate investigation. The failure to call witnesses for the defense was not based on any lack of communication between petitioner and counsel. Furthermore, counsel's performance at trial indicates that despite whatever disagreements may

4

have existed between petitioner and him, he was adequately prepared and provided petitioner with an adequate defense. Because a complete breakdown in communication did not exist, counsel did not act deficiently by continuing his representation of petitioner, and the government is entitled to summary judgment on this ground for relief.

        2. *Failure to Object to Testimony of Detective Dismukes and to Admission of Lab Report*

Petitioner's second and third grounds for relief concern counsel's failure to challenge evidence regarding the analysis of 5.2 grams of cocaine which confidential informant Britt Jaynes obtained by controlled purchase from petitioner on 16 November 2011. (See Pet'r's Mem., DE # 122-1, at 19-24.) Petitioner contends that counsel should have objected to the following testimony from Detective Dismukes:

> Q. [D]id you get a report eventually back from CCBI indicating that it was cocaine[?]
> A. I <u>did receive information that it had been tested. I did not get the report back from CCBI</u>[2] <u>though.</u>

(Id. at 19 (petitioner's emphasis).) He also argues that counsel should have objected to the admission of the subject lab report, Exhibit 131, through Detective Dismukes. (Id. at 21-23.) The detective testified about that report as follows:

> Q. You testified that the substances in this case that you seized from the controlled purchases to the search warrant were sent to the CCBI for testing; correct?
> A. Yes.
> Q. Showing you now a number of exhibits. If you can go one by one, referring to the number, and describing what it is, starting with government's exhibit 131.
> A. Exhibit number 131 is a CCBI, City County Bureau of Identification, it's the drug lab report.
> Q. What item was analyzed on that report?
> A. On this particular report, it was item number one from the Cary Police

---
[2] In Wake County, North Carolina, "CCBI" stands for City-County Bureau of Investigation.

> Department which was the white powder substance in the bag.   This was the
> cocaine that Britt Jaynes had purchased from B in November, from the first
> transaction.
> Q. The first transaction.   What was the result of the analysis?
> A. The result of the analysis, cocaine, schedule II.
> Q. What is the weight?
> A. 5.2 grams is the weight.

(6/6/12 Tr., DE # 112, at 128.)   The court admitted the report based on the stipulation of counsel.   (See id. at 128-29; 6/7/12 Tr., DE # 113, at 144-45.)

Prior to trial, counsel had stipulated to the weight and type of controlled substances tested.   (Webb Decl., DE # 143-1, ¶¶ 2, 3; 6/7/12 Tr., DE # 113, at 144-45.)   Counsel explains that based on his investigation and review of discovery, there were no authentication or chain of custody issues regarding the substances tested.   (Webb Decl., DE # 143-1, ¶¶ 2, 3.)   Given the stipulation, which was reasonable under the circumstances, see Gaddis v. Warden La. State Penitentiary, No. CIV.A.07-CV-2122, 2010 WL 2291998, at *5 (W.D. La. May 10, 2010) (report and recommendation) (examining trial counsel's stipulation to a lab report for a controlled substance and recognizing that "defense counsel may make reasonable stipulations regarding uncontested evidence without conceding guilt or abandoning the adversarial role, and there is a presumption that the stipulations are sound trial strategy" (citing Mattio v. Cain, 267 F. App'x 389, 391 (5th Cir. 2008)), adopted, 2010 WL 2265314 (W.D. La. June 2, 2010), counsel had no basis for objecting to the testimony cited above or the admission of Exhibit 131. Accordingly, counsel did not act deficiently, and the government is entitled to judgment as a matter of law on this ground for relief.

### 3. *Failure to Object to the Government's Vouching of Witness*

Petitioner next contends that counsel should have objected to the government's vouching

6

of witness and co-conspirator Mario Jones. Petitioner cites to the following colloquy between the prosecutor and Jones:

> Q. Now, you have been convicted of several crimes prior to your guilty plea in the conspiracy charge; correct?
> A. Yes, sir.
> Q. Go ahead and tell the members of the jury what your criminal history is to the best of your knowledge.
> A. I have assault on a Government official, possession with intent to sell crack cocaine, possession with a firearm. I can't remember any others.
> Q. You were also at some point on probation and terminated unsuccessfully.
> A. Yes.
> Q. Do you have some other convictions for drug paraphernalia as well?
> A. Yes, I have like three or four drug paraphernalia charges.
> Q. And you have said about the sale of cocaine, but do you have one conviction for that?
> A. Yes, I have a conviction for that before my Federal conviction.
> Q. Right. Go ahead and tell the members of the jury what is that you expect to get out of your cooperation.
> A. Just want to tell the truth, and you know.
> Q. <u>What is it that you expect is going to happen to your case based on your testimony?</u>
> A. <u>I could get a lower sentence on my case.</u>
> Q. <u>You, in fact, received a substantial assistance motion previously[,] correct?</u>
> A. <u>Yes, sir.</u>
> Q. <u>By the Government?</u>
> A. <u>Yes, sir.</u>
> Q. <u>Is that your expectation as well?</u>
> A. <u>Yes, sir.</u>

(Pet'r's Mem., DE # 122-1, at 24-25 (petitioner's emphasis).) According to petitioner, this testimony "gave the jury the impression that the witness's testimony had been verified, therefore, the witness's testimony must be truthful *since he had received a sentence reduction in the past.*" (Id. at 26 (emphases in original).)

Petitioner is correct that it is improper for a prosecutor to vouch for the testimony of government witnesses. United States v. Sanchez, 118 F.3d 192, 198 (4th Cir. 1997). "Vouching occurs when a prosecutor indicates a personal belief in the credibility or honesty of a

7

witness[.]" Id.

The court agrees with the government that what occurred here was not vouching. Prior to the prosecutor's questioning of Jones about his cooperation, the government introduced, and the court admitted into evidence, Jones's plea agreement. After questioning Jones about his involvement in and witnessing drug deals with petitioner, the prosecutor went on to question Jones about his prior convictions and his expectation that his cooperation would result in a lower sentence. All this was the prosecutor's attempt to blunt the effect of any potential impeachment by the defense on cross-examination, which is generally permissible. See United States v. Balark, 412 F. App'x 810, 817 (6th Cir. 2011) ("The government has the right to inform the jury of agreements made with the witnesses and their obligations under such agreements. Referring to such agreements in appropriate circumstances allows the prosecutor to deflect defendant's use of a plea agreement to attack the witness's credibility." (citing United States v. Tocco, 200 F.3d 401, 416-17 (6th Cir. 2000); United States v. Townsend, 796 F.2d 158, 162-63 (6th Cir. 1986)). As such, counsel's failure to object to this line of questioning was not deficient.

Even if it was, petitioner cannot satisfy Strickland's second prong—prejudice. Because Jones was not the only witness whose testimony pertained to the drug conspiracy and because the other evidence against petitioner was strong, he cannot establish a reasonable probability that the outcome of his trial would have been different had counsel objected to the above line of questioning. The government is entitled to summary judgment on this ground for relief.

4. *Failure to Present Any Defense*

Petitioner next claims counsel was ineffective for failing to present any plausible defenses during trial. Specifically, petitioner takes issue with the fact that counsel did not call

8

as a witness either Kino Wooten or Bruce Douglas to refute the testimony of two prosecution witnesses and co-conspirators, Terrill Owens and Steven Dennis, who claimed to have witnessed petitioner selling drugs at Wooten's residence when Wooten or Douglas was present. (Pet'r's Mem., DE # 122-1, at 28.) Wooten was incarcerated for an unspecified time between 2010 and 2012. (Wooten Aff., DE # 122-1, at 42 ¶ 3.) Petitioner asserts that Wooten was incarcerated when the drug transactions took place. Petitioner contends counsel failed to investigate Wooten's criminal history which would have disclosed the fact Wooten was incarcerated during that time. Petitioner argues that "[h]ad the jury heard that these witnesses were not being truthful in their testimony, the jury might have discredited the witness' testimony in their entirety and most likely acquitted [him]." (Pet'r's Mem., DE # 122-1, at 29.)

In regards to this claim, defense counsel declares:

Both [co-counsel] and I spent many hours reviewing criminal records and histories of all potential witnesses, including Kino Wooten. We also discussed the possibility of calling Wooten (as well as others) to testify, but ultimately made a strategic determination that Wooten and/or others would not be helpful and may actually cause more harm to Petitioner's case. We reviewed the three interviews of Steven Dennis who testified that he witnessed Petitioner at Kina Wooten's house on several occasions conducting drug deals. We determined that the occasions occurred prior to Wooten's incarceration in 2010 and we based that on the fact that Dennis stated that he may have met Petitioner in 2009 and further that Dennis indicated "that Ingram was at Kino's house with some frequency through the winter or fall of 2009." (Page 3 of Steven Dennis Interview of 9/28/2011). We also checked the criminal record of Kino Wooten and determined that based on his record he would not be a favorable witness for Petitioner. Finally we reviewed the dates of Wooten's incarceration and determined that he was likely not incarcerated during the vague time periods referenced by Steven Dennis. Wooten was incarcerated in late January of 2010. According to Steven Dennis, most, if not all, of the transactions involving Wooten and/or his residence occurred in 2009 or early 2010, consistent with the debriefings and testimony by Steven Dennis.

(Webb Decl., DE # 143-1, ¶ 5.)

Given counsel's unrefuted testimony, the court concludes that counsel made a reasonable strategic decision not to call witnesses for the defense, even though Wooten was incarcerated during 2010 through 2012. Therefore, counsel's performance was not deficient in this regard, see Buckner v. Polk, 453 F.3d 195, 201 (4th Cir. 2006) ("Counsel's conduct is generally presumed to be a reasonable strategic choice, but is not reasonable to the extent that the choice of strategy does not rely upon either a full investigation of the law and facts or an abbreviated investigation of the law and facts limited only by 'reasonable professional judgments.'" (quoting Strickland, 466 U.S. at 690-91)), and the government is entitled to summary judgment on this ground for relief.

5. *Failure to Advise Court When Petitioner was not Present in Courtroom*

According to petitioner, he was not present in the courtroom when the two notes from the jury during deliberations were read in open court or when an additional instruction was provided to the jury in response to one of those notes. Petitioner argues that counsel was constitutionally ineffective in failing to advise the court of petitioner's absence during these times.

Assuming it was error for the court to read the jury notes and formulate responses in petitioner's absence,[3] see United States v. McGee, 602 F. App'x 90, 94 (4th Cir. 2015), and that counsel was deficient in not objecting to petitioner's absence, petitioner must still show resulting prejudice in order to survive summary judgment. To evaluate this issue, the court examines the contents of the notes and the circumstances regarding their reading and the court's responses.

The notes were read in open court. Defense counsel was present in the courtroom when

---

[3] It is not clear from the record whether petitioner was in fact absent. The court assumes without deciding that he was absent.

the court read both notes. In the first note, the jury requested a chart the government used during its closing argument. After confirming with both counsel that the chart was not an exhibit used during trial, the court responded to the jury with a note reading as follows, "Members of the jury, the chart is not an exhibit. You must rely on your recollection. Judge Britt." (6/8/12 Tr., DE # 114, at 16.) In the second note, the jury requested guidance regarding their inability to come to a unanimous decision on a count. Outside the presence of the jury, the court stated its intention to possibly give an Allen charge[4] depending on the foreperson's responses to the court's questioning. After learning the jury was deadlocked on two counts, the court gave the Allen charge to the jury, along with the instruction that it was to be taken in consideration with the instructions previously given and reminding the jurors of the earlier instructions regarding the defendant's presumed innocence and the burden of proof resting on the government. The court's supplemental instructions, including the Allen charge, comport with the law. There is no reasonable probability that had petitioner been present, the court would have changed in its responses to the notes or, more importantly, the outcome of trial would have been different. Therefore, petitioner cannot show prejudice, and the government is entitled to summary judgment on this ground for relief.

6. *Failure to Object to Petitioner's Post-Arrest Statements*

Petitioner contends that counsel should have objected to the testimony of Detective Wenhart and Investigator Walsh regarding statements petitioner made following his arrest. Detective Wenhart testified that after he had advised petitioner of his Miranda rights, and as he

---

[4] "An *Allen* charge is given by a trial court when a jury has reached an impasse in its deliberations and is unable to reach a consensus." United States v. Cropp, 127 F.3d 354, 359 (4th Cir. 1997) (citing Allen v. United States, 164 U.S. 492 (1896)).

11

and Investigator Walsh transported petitioner to the DEA field office for federal arrest processing, petitioner stated, "You all are making me out bigger than I am. I am not the big guy that you think I am." (6/7/12 Tr., DE # 113, at 66.) Counsel objected to the testimony on the ground of relevance, which the court overruled. (Id.) Investigator Walsh testified that while petitioner was in an interview room of the local police department, petitioner said, "You know, it's not me. I am not a big time guy. I am not big time. You got the wrong guy. I am not the big dealer. . . . You know, I am just a quarter man." (Id. at 138-39.) Counsel did not lodge an objection to this testimony, but on cross-examination he asked Investigator Walsh whether he initiated questioning of petitioner in the interview room, and Investigator Walsh responded that he did not. (Id. at 141.)

Petitioner characterizes this testimony as his, in effect, admitting "that 'I am a small drug dealer.'" (Pet'r's Mem., DE # 122-1, at 33.) Petitioner argues that counsel should have challenged the admissibility of the admissions against him in a pretrial motion to suppress and should have developed "the issue of 'custodial interrogation' by *voir dire*, outside the presence of the jury." (Id. at 34.)

Even assuming that counsel should have done more in regards to challenging this testimony, petitioner has not alleged what questioning of either law enforcement officer would have revealed so as to result in the court suppressing petitioner's statements. Nor has petitioner plausibly alleged that, had the court suppressed the statements (either on a pre-trial motion to suppress or on *voir dire* of the witness outside the presence of the jury), the result of the trial would have been different given the substantial other evidence against him. (See Opinion on Appeal, DE # 119, at 23-24 (concluding that record on appeal did not conclusively establish

12

ineffective assistance of counsel on this ground).) The government therefore is entitled to summary judgment on this ground for relief.

7. *Cumulative Error*

Finally, petitioner argues that the cumulative impact of counsel's errors require the court to vacate his conviction. "Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect so as to deny due process." United States v. Fernandez, 145 F.3d 59, 66 (1st Cir. 1998) (citations omitted).

> The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. To prevent the synergistic effect of these errors from escaping review, courts attempt to determine whether the whole is greater than the sum of its parts. The cumulative effect analysis requires a petitioner to establish two elements: (1) at least two errors were committed in the course of the trial; (2) considered together, along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial.
> . . . . This requires an examination of the entire record, paying particular attention to the nature and number of alleged errors committed; their interrelationship, if any, and their combined effect; how the trial court dealt with the errors, including the efficacy of any remedial measures; and the strength of the prosecution's case. To warrant relief, the reviewing court must determine that the effect of the errors, considered together, could not have been harmless. Put another way, a court must be firmly convinced that but for the errors, the outcome of the trial probably would have been different.

Alvarez v. Boyd, 225 F.3d 820, 824-25 (7th Cir. 2000) (citations and internal quotation marks omitted).

Even assuming that counsel performed deficiently by failing to advise the court when petitioner was not in the courtroom and by failing to object to petitioner's post-arrest statements,[5]

---

[5] As its name connotes, the cumulative error analysis applies only to *errors*. See United States v. Russell, 34 F. App'x 927, 927-28 (4th Cir. 2002). As such, in evaluating petitioner's cumulative error argument, the court does not consider those grounds that the court has reviewed on the merits and found there was no error on the part of counsel.

13

the cumulative effect of these purported errors was harmless given they were only two unrelated errors and the strong evidence against petitioner.

B.  Johnson Claim

In his amendment to his § 2255 motion, petitioner challenges his sentence as a career offender based on the Supreme Court's decision in Johnson. The government moves to place this claim in abeyance pending the Court's decision in Beckles v. United States, No. 15-8544. The Court recently issued its decision in Beckles, and therefore, the government's request to place the Johnson claim in abeyance is moot.

### III.  CONCLUSION

For the foregoing reasons, the government's motion for summary judgment is ALLOWED. Petitioner's ineffective assistance of counsel claims are DISMISSED. Petitioner's claim based on Johnson remains. Within 20 days of the filing of this order, the government is DIRECTED to file an answer or other response to petitioner's Johnson claim.

This 11 April 2017.

_____
W. Earl Britt
Senior U.S. District Judge